# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| EZEKIEL SIMPSON, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
| v. | )     No. 4:07CV00347 ERW |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence [doc. #1] pursuant to Title 28 U.S.C. §2255.

## I.    BACKGROUND FACTS

Ezekiel Simpson's ("Mr. Simpson") case presented a burdensome assignment for the sentencing Court as noted from a Court comment in the sentencing transcript, "but the significance of this sentence on his life and on the life of his family is so severe that it just rings out to me that it's too much, but the law does not permit anything less than the sentence that has to be imposed." (Sent. Tr. P.9 L.19-22). As the record clearly demonstrates, the burden was not the result of over-zealous prosecution, or the ineffectiveness of Mr. Simpson's very competent counsel, but instead, Mr. Simpson's refusal to accept an offer of the Government for a ten-year sentence in exchange for a plea of guilty. The facts of this case are no different than too many others, where the cost of doing drug business, before an offender gets to federal court, includes little, if any, incarceration. When an offender's experience in trafficking drugs is not interrupted by a significant period of incarceration, when apprised by competent counsel that he is facing a mandatory minimum of ten years upon a finding of guilt for a federal drug offense because of prior offenses, his inclination is to think his

counsel is out of touch with reality, because prior prosecutions have resulted in little, if any, incarceration. Frequently, as in this case, the first reaction is to get another lawyer. Mr. Simpson, with a new lawyer, and a good one, still had the unusual chance to accept a ten-year mandatory minimum sentence on a plea of guilty. He, not his lawyer, rejected that opportunity.

On October 4, 2004, a jury was called for a trial of Mr. Simpson who was charged with the offense of knowingly and intentionally possessing with the intent to distribute a mixture or substance containing a detectable amount of cocaine base, crack, a schedule II narcotic controlled substance, in violation of Title 21 United States Code § 841(a)(1) where the quantity of cocaine base was in excess of 50 grams and the offense, occurring on May 26, 2004, was punishable under Title 21 U.S.C. § 841(b)(1)(A)(iii). Mr. Simpson said on the record, before the jury was called to the courtroom, that he wanted to plead guilty. The court clerk was advised to notify the jury clerk to hold the jury in the jury assembly room. The Court began conducting the guilty plea litany while Mr. Simpson was placed under oath. When Mr. Simpson said, on the morning of trial, that he wanted to plead guilty, the superceding indictment had been filed, and Mr. Ringwald, his second appointed counsel and trial counsel, told him that the position of the Government was that if he entered a plea of guilty, the term of imprisonment would be twenty years, and if he stood trial and was convicted, the mandatory minimum sentence would be twenty years. During the guilty plea litany, Mr. Simpson expressed dissatisfaction with the legal representation of Mr. Ringwald. Mr. Ringwald, in response to an inquiry by the Court, stated:

> Judge. This is when -- Ezekiel is currently out on bond. At the time he was in Ste. Gen. County Jail, we had filed a motion to suppress, and there was, you know, a hearing, an R&R on that from Judge Medler. Prior -- the original indictment was for a mandatory minimum of 10 years. I've spoke to Mr. Keller numerous times before he -- you know, before he filed the superseding to enhance him to double mandatory minimum due to his prior crack -- he had a crack conviction out of the

> State of Missouri, City of St. Louis Circuit Court, approximately, I think, around 2000, and I -- you know, all I could do is go down to tell Mr. Simpson, "You know, if you're going to plea, right now would probably be the best time to plea because if you go to trial, they're looking to enhance you to double mandatory minimum." You know, that's about as clear as I could be with it is just -- you know, I was telling him that, you know, the amount of time that he would be facing was increasing, and that was, you know, just a function of, you know, the case going through -- you know, getting more mature, closer to trial, that, you know, the indictment was going to change, and that was -- obviously, a lot of that was stemming from, you know, the *Blakely* decision made the superseding indictment come to light.

(Trial Tr. Vol. I P.13 L.20-P.14 L.18).

The Court asked Mr. Simpson, "[i]s that kind of how it happened, or do you have another version of it? Mr. Simpson responded, "[y]es, that's how it happened for real." (Trial Tr. Vol. I P.14 L.22-24). The Court asked Mr. Simpson, a high school graduate, "[b]ut from what you've told me, I don't see that it's anything Mr. Ringwald falsely did or did not [do] to represent you. He was telling you what the Government was doing. I mean, am I missing something there, or is that the way you understand it?" Mr. Simpson responded, under oath, "[t]hat's the way I understood it." (Trial Tr. Vol. I P.15 L.19-24). The Court conducted the entire guilty plea proceeding, up to the time when Mr. Simpson was asked if he wanted to change his plea of "not guilty" to "guilty." The Assistant United States Attorney explained that if Mr. Simpson cooperated with the Government, a motion might be filed which would permit the Court to sentence him to something less than 240 months. At the end of the guilty plea litany, the Court explained that if Mr. Simpson decided to go to trial, if a jury found him not guilty, he could go home. When asked if he wanted to change his plea to guilty, Mr. Simpson said he wanted to go to trial. The jury was called into the courtroom, a jury trial was conducted, and on strong evidence of guilt, Mr. Simpson was found to be guilty by the jury. At the sentencing hearing, the

3

following is reported:

THE COURT: All right. Before I hear from you, I want to say some things, and I'll have some more to say later, but you need to know that I have received a number of letters and one from you, but several from your family members that are some of the best letters I've ever seen on behalf of anyone. They speak of your -- the quality of your character and many of the very positive attributes of your life, and if you have not seen those, then you need to ask your lawyer to -- and I'll make them available to you. They are truly outstanding letters. I'll hear from you now, sir.

THE DEFENDANT: Yes, Your Honor. I had no choice but to go to trial. The day that I was in your courtroom, October the 4th, I was like -- I asked Mr. Ringwald -- I was, like, you know what I'm saying, "Should I plead guilty?" He was like, "Either way, if you plead guilty or go to trial, you're Sentencing Hearing going to get 20 years regardless." That's what you told me, so –

THE COURT: Okay.

MR. RINGWALD: Anything else?

THE DEFENDANT: That's it.

MR. RINGWALD: With regard to that, Your Honor, yeah, at that time, he had been enhanced, and I did speak to the prosecutor that morning, and he was, like, "Either you can plead guilty to the 20 or go to trial on 20, and obviously, you know, either get guilty or innocent, either zero or 20 years." When he was in Ste. Genevieve County Jail, he was detained there prior to getting bond. He was bonded out. In fact, he was on bond during the trial. I did handwrite a note saying, you know, I'd talked to the prosecutor, and at that time, he was at a 10-year mandatory minimum, and they were getting ready to file the superseding indictment. You know, if he wanted to plead guilty, he could have plead guilty to the 10 at that time. You know, I didn't -- you know, I just scratched a note saying, "You understand if I go forward, then, you know, it's no longer a 10-year; it's zero or 20," and obviously, you know, all I can do is give that information to my client, and, you know, he makes the -- you know, it's his life. So, obviously, he's going to make his decision, and I'll represent him the best I can for a plea or for a trial, Sentencing Hearing and he wanted to go to trial.

4

(Sent. Tr. P.7 L.11-P9. L.1).

On February 3, 2005, Mr. Simpson was sentenced to a term in the Bureau of Prisons of two hundred forty (240) months and a term of supervised release of ten (10) years. (Sent. Tr. P.10 L.25-P.11 L.4). His sentence and judgment was affirmed on appeal by the Eighth Circuit Court of Appeals and that Court's Mandate was issued on February 27, 2006. The present motion under §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody was timely filed in this Court on February 20, 2007, alleging two grounds for relief.

## II.   STANDARDS FOR RELIEF UNDER 28 U.S.C. § 2255

Pursuant to 28 U.S.C. §2255, a federal prisoner may seek relief from a sentence imposed against him on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. For § 2255 petitions, "the question in each case must be . . . whether the kind of violation alleged demonstrates either 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Poor Thunder v. United States*, 810 F.2d 817, 822 (8th Cir. 1987) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

The Court must hold an evidentiary hearing to consider claims in a §2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994), *quoted in Furnish v. United States*, 215 F.Supp.2d 1020, 1023 (E.D. Mo. 2000); 28 U.S.C. §2255. Thus, a petitioner is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle [the petitioner] to

5

relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). The Court may dismiss a claim "'without an evidentiary hearing if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).

A §2255 petitioner's claims may be limited by procedural default. Claims that were raised and decided on direct appeal ordinarily cannot be relitigated in a §2255 Petition.[1] *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Moreover, a petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a §2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Even constitutional or jurisdictional claims that could have been raised on direct appeal but were not are procedurally defaulted unless the petitioner can demonstrate either cause for the default and actual prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997).

A §2255 petition may be based upon a violation of the Sixth Amendment right to effective assistance of counsel. A showing of ineffective assistance of counsel requires a petitioner to demonstrate that "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." *Auman v. United States*, 67 F.3d 157, 162 (8th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To prove ineffective assistance under the first prong, a petitioner must

---

[1] An exception to this general prohibition exists only where the alleged error constitutes a fundamental defect that inherently results in the complete miscarriage of justice. United States v. Manko, 772 F.2d 481, 482 (8th Cir. 1985); *see also* Wiley, 245 F.3d at 752 (exception recognized only when petitioner produces convincing new evidence of actual innocence).

demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

The recent Eighth Circuit case of *Marcrum v. Luebbers*, No. 05-3930 (Dec. 7, 2007), is very instructive in resolving the issue of "deficiency of performance" in the *Strickland* context:

> The test we apply for deficiency of performance is an objective standard of reasonableness. Id. at 688. In *Strickland*, when the Supreme court pronounced this standard, it expressly declined to dictate detailed rules for deciding reasonableness: "More specific guidelines are not appropriate." Id. However, *Strickland* gave us several guides to decision: we must assess reasonableness on all the facts of the particular case, we must view the facts as they existed at the time of counsel's conduct, and we must evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing of the state's case. Id. at 690. Moreover, the reasonableness of counsel's actions may depend on his client's wishes and statements. Id. at 691; see *Schriro v. Landrigan*, 127 S.Ct. 1933, 1941 (2007) (client's statement to court that he did not wish to present mitigating evidence supported state court finding of no prejudice from counsel's failure to investigate such evidence). A court considering a defendant's attack on his conviction must be "highly differential" in assessing whether counsel's course of conduct could be considered a sound trial strategy rather than an error, *Strickland*, 466 U.S. at 689, and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. In other words, the burden of proof is on the petitioner to show that "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman*, 477 U.S. at 384.
> 
> \* \* \*
> 
> If viewed with appropriate deference, counsel's performance was in fact deficient, the convicted defendant will only be entitled to relief if he shows there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in outcome." Id. The reviewing court must not consider the attorney error in isolation, but instead must assess how the error fits into the big picture of what happened at trial. Id. at 696. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id.

*Marcrum v. Luebbers*, No. 05-3930 (8th Cir. 2007) slip op. at pp. 21-23.

Even if sufficient proof of deficient performance exists, relief may only be obtained if a petitioner also proves that counsel's deficient performance prejudiced the case. *Strickland*, at

7

694. The Court may address the two prongs of the *Strickland* test in any order, and if a petitioner fails to make a sufficient showing on one prong, the Court need not address the other. *Strickland*, at 697; *Matthews v. United States*, 114 F.3d 112, 113-14 (8th Cir. 1997).

### III. ANALYSIS

This Court has jurisdiction to hear this case, observing that Movant is imprisoned in the Bureau of Prisons under a sentence and judgment of this Court dated February 3, 2005. He was charged by a grand jury indictment June 14, 2004, with the crime of possession with the intent to distribute fifty grams or more of cocaine base (crack) for conduct occurring May 26, 2004. The Magistrate Judge denied Movant's duly filed motion to suppress on July 21, 2004. On July 22, 2004, the Government sought a superseding indictment, after the case of *Blakely v. Washington*, 542 U.S. 296 (2004) was reported, to more specifically charge Movant with knowingly and intentionally possessing with the intent to distribute fifty grams or more of cocaine base (crack) and the amount of cocaine base (crack)for which Movant was responsible was more than fifty grams but less than one hundred fifty grams of cocaine base (crack). The Magistrate's Report and Recommendation was adopted by this Court on August 9, 2004. On September 21, 2004, Assistant United States Attorney, Roger Keller filed a criminal information charging that Movant had been previously convicted of possession of a controlled substance, which crime was punishable by imprisonment for a term exceeding one year, and therefore, was subject to an enhanced sentence of a term of imprisonment of not less than twenty years nor more than life under Title 21 United States Code 841 (b)(1)(A)(iii). The original indictment carried a mandatory minimum sentence of only ten years.

Trial by jury began October 4, 2004, and concluded with a jury verdict of guilty on the

single count indictment on October 5, 2004. On February 1, 2005, Movant's trial counsel filed an objection to the pre-sentence report, requesting that Movant be sentenced to the mandatory minimum sentence of ten years. The objection was overruled, and Movant was entenced by this Court to a term of 240-months imprisonment in the Bureau of Prisons. On February 3, 2005, Movant timely filed a Notice of Appeal. The Eighth Circuit Court of Appeals affirmed his conviction January 17, 2006. The Mandate issued February 27, 2006. Movant's timely motion to vacate, set side or correct sentence was filed February 20, 2007.

### A. GROUND ONE

Movant alleges ineffective assistance of counsel because, "I had two lawyer (*sic*), but when the second lawyer came he told me it was to (*sic*) late to plea (*sic*) guilty he said you are going to get twenty years regardless." This ground fails under both *Strickland* prongs. There is no showing by Mr. Simpson that his trial counsel (1) so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and likewise, Mr. Simpson fails to carry his burden of proof that (2) his counsel's deficient performance prejudiced his defense.

The United States Attorney, in the absence of a showing of prosecutorial misconduct, has authority to prosecute a defendant for specific crimes upon indictment of a grand jury. When Mr. Simpson was represented by his first lawyer, an offer was made by the Assistant United States Attorney that in exchange for Mr. Simpson's plea of guilty to the crime then charged, the Government would enter into a plea agreement providing for a ten-year sentence of imprisonment, upon approval of the court. That proposition was unacceptable to Mr. Simpson whose response was to request another lawyer. That request was granted. After Mr. Ringwald entered his appearance, he told Mr. Simpson if he entered a plea of guilty, his sentence would be ten-years

9

imprisonment, but the Government was threatening to file a superceding charge that would require, on a finding of guilt, a twenty-year mandatory minimum sentence. The Government's offer on the morning of trial was no longer extant. The Government was prepared to try Mr. Simpson's case to a jury upon a superceding indictment which provided for a mandatory minimum sentence of not ten, but twenty years imprisonment. After Mr. Simpson demurred on the ten-year mandatory minimum sentence, Mr. Ringwald told Mr. Simpson that the position of the United States Attorney was he could plead guilty and under the law, which on a conclusion of guilt the mandatory minimum sentence the sentencing judge would be allowed to impose would be a sentence of no less than twenty-years imprisonment, or, Mr. Simpson could be given a trial by jury, and in the event he would be found guilty, the mandatory minimum sentence a sentencing judge could impose would be twenty-years imprisonment. Mr. Simpson said he wanted to go to trial before a jury, and Mr. Ringwald executed his professional responsibilities appropriately in all respects.

It is clear beyond any question that Mr. Simpson' s trial counsel, after considering all of the facts and circumstances of this case, satisfied the objective standard of reasonableness in his total performance as Mr. Simpson's trial counsel. Mr. Simpson fails to carry his burden of proof on the first *Strickland* prong of deficiency of performance of his trial counsel in any manner.

Additionally, under the second *Strickland* prong, Mr. Simpson fails to carry his burden of proof to demonstrate in any way how he was prejudiced by the representation of his trial counsel. Mr. Ringwald explained to Mr. Simpson, before the Government filed the superseding enhancement, that if he entered a plea of guilty to the charge then pending, Mr. Simpson's punishment would be ten years. As noted above, Mr. Simpson testified under oath that Mr. Ringwald had explained that to him. It is undisputed that Mr. Simpson elected not to plead guilty

and accept a ten-year prison sentence. He made that decision after being fully informed by Mr. Ringwald. The Government then filed a superceding indictment [doc. #27], and took the position, as the Government was lawfully entitled to do, that it was ready to proceed to trial, and if Mr. Simpson wanted to plead guilty, the minimum mandatory sentence available to him would be twenty years, or, if Mr. Simpson wanted to stand for a jury trial, and in the event a verdict of guilty on pending charges should be returned, the mandatory minimum sentence available to him would be imprisonment for twenty years. The Court having concluded that there is no lawful basis for *Habeas Corpus* relief on Mr. Simpson's Ground One, that Ground will be dismissed.

### B. GROUND TWO

Ground Two of Mr. Simpson's petition claims "[t]he jury was sleep *(sic)* for 5 minutes[.] I try to tell him, but he said don't worry about that. If you go back and watch the tape you will see they were sleep *(sic)*."" This asseveration is inconsistent with the facts as observed by the Court. Additionally, this ground was not raised on direct appeal and is procedurally defaulted. Finally, if this Ground is raised as a Sixth Amendment claim for ineffective assistance of counsel, based on the record, Mr. Simpson fails to show deficient performance of trial counsel or any prejudice resulting from allegations in Ground Two. Ground Two will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Ezekiel Simpson is not entitled to relief under 28 U.S.C. §2255 for any of the reasons raised in Grounds One or Two of his Petition.

**IT IS FURTHER ORDERED** that no evidentiary hearing will be permitted in this case, because all issues are capable of and have been decided on the record.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability as to any claim raised in Petitioner's §2255 Petition.

So Ordered this 30th Day of January, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE